# UNITED STATES DISTRICT COURT
# EASTERN DISTRICT OF LOUISIANA

**RYAN PATRICK GREEN**                                    **CIVIL ACTION**

**VERSUS**                                                              **NO.  13-347**

**N. BURL CAIN, WARDEN**                              **SECTION "H"(2)**

## REPORT AND RECOMMENDATION

This matter was referred to a United States Magistrate Judge to conduct hearings, including an evidentiary hearing if necessary, and to submit proposed findings and recommendations for disposition pursuant to 28 U.S.C. §§ 636(b)(1)(B) and (C) and, as applicable, Rule 8(b) of the Rules Governing Section 2254 Cases.  Upon review of the entire record, I have determined that a federal evidentiary hearing is unnecessary.  See 28 U.S.C. § 2254(e)(2).[1]  For the following reasons, I recommend that the instant petition for habeas corpus relief be **DISMISSED WITH PREJUDICE** as time-barred.

---

[1]Under 28 U.S.C. § 2254(e)(2), whether to hold an evidentiary hearing is a statutorily mandated determination.  Section 2254(e)(2) authorizes the district court to hold an evidentiary hearing only when the petitioner has shown either that the claim relies on a new, retroactive rule of constitutional law that was previously unavailable, 28 U.S.C. § 2254(e)(2)(A)(i), or the claim relies on a factual basis that could not have been previously discovered by exercise of due diligence, 28 U.S.C. § 2254(e)(2)(A)(ii); and the facts underlying the claim show by clear and convincing evidence that, but for the constitutional error, no reasonable jury would have convicted the petitioner. 28 U.S.C. § 2254(e)(2)(B).

I. FACTUAL AND PROCEDURAL BACKGROUND

The petitioner, Ryan Patrick Green, is incarcerated in the Louisiana State Penitentiary in Angola, Louisiana.[2] On July 22, 2004, Green was charged in an indictment in Terrebonne Parish with one count of aggravated rape and one count of attempted aggravated rape.[3]    The Louisiana First Circuit Court of Appeal summarized the facts of the case as follows:

> In May of 2004, E.P. and M.M. advised their stepmother, C.P., of inappropriate conduct committed by the defendant towards them at least four years earlier. E.P. had been living with his biological father and C.P. for approximately two years. C.P. questioned E.P. and M.M. after she found her six-year old son and his friend touching each other's "privates." The six-year old child told C.P. that E.P. had showed him the conduct.
> C.P. asked E.P. if anyone had ever done anything sexually to him. E.P. emotionally "broke down." He cried and was very upset. Approximately one and one-half hours later, he stated "Ryan Green had stuck his private in [E.P.'s] butt." E.P. also stated the defendant tried to force him to do the same thing to the defendant, made him play with the defendant's "private" while they watched television, and had forced him to "suck on [the defendant's] bird," which caused him to gag.
> C.P. asked M.M if the defendant had done anything to him. M.M. stated that while he was playing with a friend at a neighbor's house, the defendant called him back to his mother's house. When M.M. went back to his mother's house, the defendant pulled him into the bedroom, pulled his pants down, and tried to "force sex" on him, but he bit the defendant on the shoulder and ran away.
> E.P. testified at trial on November 16, 2005. His date of birth was 11/23/89. Approximately five years earlier, he had lived with his biological mother and the defendant. The sexual conduct by the defendant against him began with the defendant grabbing E.P.'s "private." On one of these occasions, after E.P. and the defendant had watched a movie that his mother had rented, the defendant asked him, "Are you going to be ready tonight?" E.P. did not respond

---

[2] Rec. Doc. No. 3.

[3] St. Rec. Vol. 1 of 4, Indictment, 07/22/04.

and went into his mother's bedroom to sleep. He did not go to his own bed because the bed was covered with his things as he was in the process of moving to his father's home. E.P. was awakened by the defendant pulling the bed covers off of him. The defendant also pulled down E.P.'s jogging shorts. E.P. indicated the defendant "came on top [of] me like a dog." The defendant put his "private" into E.P.'s "butt[,]" and went up and down about five times. The defendant then got up from the bed, grabbed E.P. by the waist, and made him do something similar to the defendant by putting E.P. behind the defendant and "shaking" E.P. to the defendant. The defendant then grabbed E.P. by the arm and the head and forced E.P.'s mouth onto the defendant's "private." The attack ended after E.P. began gagging. The defendant threatened to kill E.P. if he told anyone what had happened.

M.M. also testified at trial. His date of birth was 9/7/91. He was eight or nine years old when he left his biological mother's house to live with his father. M.M. indicated the incident involving him occurred around noon while the defendant was living with his mother. He was at "a neighbor's" house when the defendant came to the house, grabbed him by the arm, and dragged him to his mother's house. The defendant took M.M. to his room and threw him onto his bed. The defendant then pulled down M.M.'s shorts and underwear, grabbed M.M. by the shoulders, and tried to "pull [M.M.'s] butt to [the defendant's] private." The defendant also tried to make M.M. do to the defendant the same thing the defendant tried to do to M.M. M.M. bit the defendant on the shoulder, pulled up his shorts, and ran away. The defendant stated, "You damn bitch[,]" and "If you tell anybody, I'll strangle you."

A.R., the biological mother of E.P. and M.M., also testified at trial. A.R. remembered seeing a wound on the defendant's arm while he, E.P., and M.M. were living with her. She asked the defendant about the mark, but did not recall his explanation for the wound.

The defendant also testified at trial. He moved in with A.R. in 2000. He conceded there were occasions when he was alone in the residence with E.P. and M.M. He denied groping E.P. or raping him. He also denied attempting to perform a sex act on M.M. He also denied suffering an injury to his shoulder or arm while he lived with A.R.

State v. Green, 941 So.2d 200 (Table), 2006 WL 3107890, *1-2 (La. App. 1st Cir. 11/03/06), 2006-KA-0940. St. Rec. Supplemental Vol. 1 of 1.

3

Green was tried before a jury on November 15, 2005,[4] and on November 17, 2005, he was found guilty as charged on both counts.[5]   On December 9, 2005, Green was sentenced to life in prison without benefit of parole, probation or suspension of sentence in connection with his aggravated rape conviction.   As to his attempted aggravated rape conviction, Green was sentenced to 30 years in prison to run concurrently with his life sentence.[6]

On June 19, 2006, appointed counsel filed a direct appeal on Green's behalf asserting the following grounds for relief:  (1) The trial court erred in allowing into evidence objectionable testimony from the State's expert, Dana Davis. (2) Defense counsel was ineffective for failing to object to Davis's testimony in its entirety.[7] On November 3, 2006, the Louisiana First Circuit affirmed Green's convictions and sentences, but remanded the matter, stating:

> La. R.S. 15:440.6 requires that a videotape of a child's statement admitted under La. R.S. 15:440.5 be preserved under a protective order of the court to protect the privacy of the child. The trial court failed to issue such an order in this case. Accordingly, this matter is remanded to the trial court for the sole purpose of issuing a protective order to protect the privacy of the victims in this case.

---

[4]St. Rec. Vol. 2 of 4.

[5]St. Rec. Vol. 3 of 4, trial transcript, p. 749.

[6]Id., sentencing transcript, pp. 8-9.

[7]St. Rec. Supplemental Vol. 1 of 1.

State v. Green, 941 So.2d 200 (Table), 2006 WL 3107890, *7 (La. App. 1st Cir. 11/03/06), 2006-KA 0940.  St. Rec. Supplemental Vol. 1 of 1.

On December 4, 2006, Green's appointed counsel submitted a timely writ application to the Louisiana Supreme Court asserting the same arguments regarding the admission of the State's expert witness testimony.[8]  On August 31, 2007,  the Louisiana Supreme Court denied Green's writ application without opinion.[9]  Green's convictions became final 90 days later, on November 29, 2007, when he did not file a writ application with the United States Supreme Court.  Roberts v. Cockrell, 319 F.3d  690, 694 (5th Cir. 2003) (citing 28 U.S.C. § 2244(d)(1)(A); Flanagan v. Johnson, 154 F.3d 196, 200-01 (5th Cir. 1998)).  Ott v. Johnson, 192 F.3d 510, 513 (5th Cir. 1999) (citing 28 U.S.C. § 2244(d)(1)(A)); U.S. Sup. Ct. R. 13(1).

Seven (7) months later, on June 30, 2008, Green signed, dated and submitted an application for post-conviction relief in the state trial court.[10]  Green asserted the following claims:  (1) He was denied his right to appellate review and to a complete transcript.  (2) He was denied effective assistance of counsel.  (3) The district attorney

---

[8]St. Rec. Supplemental Vol. 1 of 1. Pursuant to La. S.Ct. R. X §5, petitioner had 30 days from the issuance of the state appellate court's opinion to mail or file a timely writ application in the Louisiana Supreme Court. The thirtieth day was Sunday, December 3, 2006. As weekends and holidays are not included in a limitation period when it would otherwise be the last day of the period, Green had a one-day extension of his filing deadline. See La. Code Crim. P. art. 13.

[9]State v. Green, 962 So.2d 444 (La. 2007), 2006-K-2846. St. Rec. Supplemental Vol. 1 of 1.

[10]St. Rec. Vol. 4 of 4, Uniform Application for Post-Conviction Relief (signed 06/30/08).

used an excessive number of peremptory challenges. (4) The prosecutor vouched for the credibility of a State witness. (5) The trial judge gave erroneous jury instructions regarding aggravated rape and attempted aggravated rape. On February 1, 2011, Green filed a motion for leave to file an amended and supplemental memorandum in support of his application for post-conviction relief.[11] In his amended and supplemental memorandum, Green made the following additional claims: (1) prosecutorial misconduct; (2) the trial court's failure to grant defense challenges for cause; (3) unconstitutionality of his life sentence; (4) ineffective assistance of counsel; (5) "unconstitutionality of La. R.S. 15:440.1 - 15:440.6;" and (6) due process denial by the cumulative effect of all trial errors. On July 29, 2011, the trial court denied both Green's motion for leave to file an amended and supplemental application and his original application for post-conviction relief.[12]

On August 13, 2011, Green filed a timely application for writ of review in the Louisiana First Circuit, claiming that the trial court erred in denying his motion for leave to file an amended and supplemental memorandum in support of post-conviction relief

---

[11]Id. The February 1, 2011 filing date is based upon application of the mailbox rule for prisoner filings and Green's representation, in a July 12, 2011 pleading, that he mailed his motion for leave to file an amended and supplemental memorandum on February 1, 2011 "by placing same in the hands of the Classification officer assigned to my Unit, . . ."

[12]Id., District Court Orders, signed 07/29/11.

6

and his original application for post-conviction relief.[13]   On December 5, 2011, the Louisiana First Circuit denied Green's writ application without opinion.[14]

On January 5, 2012,[15] Green filed a timely application for supervisory writs in the Louisiana Supreme Court, arguing that the lower courts erred in denying his motion for leave to file an amended and supplemental memorandum in support of post-conviction relief and his original application for post-conviction relief.[16]   On August 22, 2012, the Louisiana Supreme Court denied Green's writ application without reasons.[17]

II.   FEDERAL HABEAS PETITION

More than seven (7) months later, on March 28, 2013, the clerk of this court filed Green's petition for federal habeas corpus relief asserting the following claims: (1) There was insufficient evidence to support his convictions. (2) The trial court erred in allowing into evidence objectionable testimony from the State's expert, Dana Davis. (3) He was denied effective assistance of counsel. (4) The prosecutor impermissibly and illegally vouched for the credibility of State witnesses. (5) The trial court erred in

---

[13]Id. Green misdated the year of this pleading as the "13th day of August, 2009" on his "Affidavit/Certificate of Service."

[14]State v. Green, 2011-KW-1732 (La. App. 1st Cir. 12/05/11); St. Rec. Vol. 4 of 4.

[15]January 5, 2012 is the post-marked date on the envelope in which Green mailed his writ application to the Louisiana Supreme Court.

[16]St. Rec. Vol. 4 of 4.

[17]State ex rel. Green v. State, 97 So.3d 360 (La. 2012), 2012-KH-0066. St. Rec. Vol. 4 of 4.

denying him leave to file an amended and supplemental memorandum in support of his application for post-conviction relief. (6) The trial court erred in denying him post-conviction relief.[18]

The State filed a response in opposition to Green's petition arguing that his petition was not timely filed under federal law.[19]

III.   GENERAL STANDARDS OF REVIEW

The AEDPA comprehensively revised federal habeas corpus legislation, including 28 U.S.C. § 2254.  The AEDPA went into effect on April 24, 1996[20] and applies to habeas petitions filed after that date.  Flanagan v. Johnson, 154 F.3d 196, 198 (5th Cir. 1998) (citing Lindh v. Murphy, 521 U.S. 320 (1997)).  The AEDPA therefore applies to Green"s petition, which, for reasons discussed below, is deemed filed in this federal court on February 18, 2013.[21]

---

[18]Rec. Doc. No. 3, pp. 1-2.

[19]Rec. Doc. No. 8.

[20]The AEDPA, which was signed into law on that date, does not specify an effective date for its non-capital habeas corpus amendments. Absent legislative intent to the contrary, statutes become effective at the moment they are signed into law. United States v. Sherrod, 964 F.2d 1501, 1505 (5th Cir. 1992).

[21]The Fifth Circuit has recognized that a "mailbox rule" applies to pleadings, including habeas corpus petitions filed after the effective date of the AEDPA, submitted to federal courts by prisoners acting pro se.  Under this rule, the date when prison officials receive the pleading from the inmate for delivery to the court is considered the time of filing for limitations purposes. Coleman v. Johnson, 184 F.3d 398, 401 (5th Cir. 1999), cert. denied, 529 U.S. 1057 (2000); Spotville v. Cain, 149 F.3d 374, 378 (5th Cir. 1998); Cooper v. Brookshire, 70 F.3d 377, 379 (5th Cir. 1995). Green's petition was filed by the clerk of court on March 28, 2013, when the filing fee was received after denial of his pauper

The threshold questions in habeas review under the amended statute are whether the petition is timely and whether the claims raised by the petitioner were adjudicated on the merits in state court; i.e., the petitioner must have exhausted state court remedies and must not be in "procedural default" on a claim.  Nobles v. Johnson, 127 F.3d 409, 419-20 (5th Cir. 1997) (citing 28 U.S.C. § 2254(b), (c)).

The State alleges that Green's petition is not timely filed.  The record supports that conclusion.

IV.    STATUTE OF LIMITATIONS

The AEDPA requires a petitioner to bring his Section 2254 petition within one year of the date his conviction became final.[22]  Duncan v. Walker, 533 U.S. 167, 179-80

---

application. Green dated the signature on the petition February 18, 2013. This is the earliest date on which he could have delivered the pleadings to prison officials for mailing. The fact that he later paid the filing fee does not alter the application of the federal mailbox rule to his pro se petition. See Cousin v. Lensing, 310 F.3d 843, 847 (5th Cir. 2002) (mailbox rule applies even if inmate has not paid the filing fee at the time of mailing) (citing Spotville, 149 F.3d at 374).

[22]The statute of limitations provision of the AEDPA provides for other triggers which do not apply here:
(1) A 1-year period of limitation shall apply to an application for a writ of habeas corpus by a person in custody pursuant to the judgment of a State court. The limitation period shall run from the latest of--
A.    the date on which the judgment became final by the conclusion of direct review or the expiration of the time for seeking such review;
B.    the date on which the impediment to filing an application created by State action in violation of the Constitution or laws of the United States is removed, if the applicant was prevented from filing by such State actions;
C.    the date on which the constitutional right asserted was initially recognized by the Supreme Court, if the right has been newly

(2001).  Green's conviction was final on November 29, 2007, when he did not file a writ

application with the United States Supreme Court.

Therefore, under a literal application of the statute, Green had until Friday,

November 29, 2008, to file his federal habeas corpus petition, which he did not do.  His

petition must be dismissed as untimely, unless the one-year statute of limitations period

was interrupted or otherwise tolled in either of the following two ways recognized in the

applicable law.

First, the United States Supreme Court has held that the one-year statute of

limitations period in Section 2244(d)(1) of the AEDPA may be equitably tolled only

when the petitioner has pursued his rights diligently and rare or extraordinary

circumstances exist which prevented timely filing.  Pace v. DiGuglielmo, 544 U.S. 408,

418 (2005); Fisher v. Johnson, 174 F.3d 710, 713 (5th Cir. 1999), cert. denied, 531 U.S.

1164 (2001); Cantu-Tzin v. Johnson, 162 F.3d 295, 299 (5th Cir. 1998); Davis v.

Johnson, 158 F.3d 806, 810 (5th Cir. 1998), cert. denied, 526 U.S. 1074 (1999).

Equitable tolling is warranted only in situations where the petitioner was actively misled

---

recognized by the Supreme Court and made retroactively
applicable to cases on collateral review; or
D.      the date on which the factual predicate of the claim or claims
presented could have been discovered through the exercise of
due diligence.
(2) The time during which a properly filed application for State post-conviction or other
collateral review with respect to the pertinent judgment or claim is pending shall not be
counted toward any period of limitation under this subsection. 28 U.S.C. § 2244(d).

or is prevented in some extraordinary way from asserting his rights.  Pace, 544 U.S. at 418-19; Cousin, 310 F.3d at 848.

Green has not asserted any reason that might constitute rare or exceptional circumstances why the one-year period should be considered equitably tolled, and my review of the record reveals none that might fit the restrictive boundaries of "exceptional circumstances" described in various decisions.  See Holland v. Florida, 130 S. Ct. 2549, 2574-75 (2010) (equitable tolling was warranted where attorney was more than negligent when he failed to satisfy professional standards of care by ignoring the client's requests to file a timely federal petition and in failing to communicate with the client during a period of years in spite of the client's letters); Hardy v. Quarterman, 577 F.3d 596, 599-600 (5th Cir. 2009) (equitable tolling was warranted where petitioner suffered a significant state-created delay when, for nearly one year, the state appeals court failed in its duty under Texas law to inform him that his state habeas petition had been denied, petitioner diligently pursued federal habeas relief, and he persistently inquired to the court.); United States v. Wynn, 292 F.3d 226 (5th Cir. 2002) (tolling warranted when defendant was deceived by attorney into believing that a timely motion to vacate was filed); Coleman v. Johnson, 184 F.3d 398, 402 (5th Cir. 1999), cert. denied, 529 U.S. 1057 (2000) ("A garden variety claim of excusable neglect does not support equitable tolling."); Fisher, 174 F.3d at 715 (tolling not justified during petitioner's 17-day stay in

11

psychiatric ward, during which he was confined, medicated, separated from his glasses and thus rendered legally blind, and denied meaningful access to the courts); Cantu-Tzin, 162 F.3d at 300 (State's alleged failure to appoint competent habeas counsel did not justify tolling); Davis, 158 F.3d at 808 n.2 (assuming without deciding that equitable tolling was warranted when federal district court three times extended petitioner's deadline to file habeas corpus petition beyond expiration of AEDPA grace period).

In addition to equitable tolling, the AEDPA itself provides for interruption of the one-year limitations period, in stating that "[t]he time during which a properly filed application for State post-conviction or other collateral review with respect to the pertinent judgment or claim is pending shall not be counted toward any period of limitation under this subsection." 28 U.S.C. § 2244(d)(2) (emphasis added). By its plain language, this provision does not create a new, full, one-year term within which a federal habeas petition may be filed at the conclusion of state court post-conviction proceedings. Flanagan, 154 F.3d at 199 n.1. The Supreme Court has clearly described this provision as a tolling statute. Duncan, 533 U.S. at 175-178.

The decisions of the Fifth Circuit and other federal courts cited herein have held that because this statute is a tolling provision, the time during which state court post-conviction proceedings are pending must merely be subtracted from the one-year limitations period:

12

> [Section] 2244(d)(2) provides that the period during which a properly filed
> state habeas application is pending must be excluded when calculating the
> one[-]year period. Under the plain language of the statute, any time that
> passed between the time that [petitioner's] conviction became final and the
> time that his state application for habeas corpus was properly filed must be
> counted against the one[-]year period of limitation.

Flanagan, 154 F.3d at 199 n.1; accord Brisbane v. Beshears, 161 F.3d 1, 1998 WL

609926 at *1 (4th Cir. Aug. 27, 1998) (Table, Text in Westlaw); Gray v. Waters, 26 F.

Supp.2d 771, 771-72 (D. Md. 1998).

For a post-conviction application to be considered "properly filed" within the

meaning of Section 2244(d)(2), the applicant must "'conform with a state's applicable

procedural filing requirements,'" such as timeliness and location of filing.  Pace, 544

U.S. at 414 ("When a postconviction application is untimely under state law, 'that [is]

the end of the matter' for purposes of § 2244(d)(2)");  Williams v. Cain, 217 F.3d 303,

306-307 n.4 (5th Cir. 2000) (quoting Villegas v. Johnson, 184 F.3d 467, 469 (5th Cir.

1999));  Smith v. Ward, 209 F.3d 383, 384-85 (5th Cir. 2000).   The timeliness

consideration in Louisiana, for purposes of the AEDPA, requires application of a prison

mailbox rule to state pleadings.  Causey v. Cain, 450 F.3d 601, 604-05 (5th Cir. 2006).

A matter is "pending" for Section 2244(d)(2) purposes "as long as the ordinary

state collateral review process is 'in continuance.'"  Carey v. Saffold, 536 U.S. 214, 219-

20 (2002); <u>Williams</u>, 217 F.3d at 310 (a matter is "pending" for Section 2244(d)(2) purposes until "'further appellate review [is] unavailable under [Louisiana's] procedures.'").

The phrase "other collateral review" in the statute refers to state court proceedings challenging the pertinent judgment subsequently challenged in the federal habeas petition. <u>Dillworth v. Johnson</u>, 215 F.3d 497, 501 (5th Cir. 2000) (state habeas petition challenging a prior conviction in one county was other collateral review even though filed as a challenge to a second conviction in a different county); <u>Nara v. Frank</u>, 2001 WL 995164, slip opinion at *5 (3rd Cir. Aug. 30, 2001) (motion to withdraw a guilty plea is "other collateral review").  A "pertinent judgment or claim" requires that the state filings for which tolling is sought must have challenged the same conviction being challenged in the federal habeas corpus petition and must have addressed the same substantive claims now being raised in the federal habeas corpus petition.  <u>Godfrey v. Dretke</u>, 396 F.3d 681, 686-88 (5th Cir. 2005).

The one-year AEDPA limitations period began to run in Green's case on November 30, 2007, the day after his conviction was final.  The limitations period ran uninterrupted for 213 days, until June 30, 2008, when he signed and submitted an application for post-conviction relief in the state trial court. The limitations period remained tolled until August 22, 2012, when the Louisiana Supreme Court denied Green's final state court writ application.

14

The limitations period began to run again the next day, on August 23, 2012, and did so uninterrupted for the remaining 152 days, until January 22, 2013, when it expired. Green had no properly filed state post-conviction or other collateral review pending during that time period. Green allowed another 27 days to expire before he signed and submitted his federal petition on February 18, 2013, the date his federal habeas petition is deemed filed in this court under the mailbox rule.

The record establishes that, after his conviction became final, Green allowed more than one year to lapse without any properly filed and pending state court proceedings and without having filed a timely federal petition for habeas corpus relief. Thus, his federal habeas corpus petition must be dismissed as time-barred.

## RECOMMENDATION

**IT IS RECOMMENDED** that the petition of Ryan Patrick Green for issuance of a writ of habeas corpus under 28 U.S.C. § 2254 be **DISMISSED WITH PREJUDICE** as time-barred.

A party's failure to file written objections to the proposed findings, conclusions, and recommendation in a magistrate judge's report and recommendation within fourteen (14) days after being served with a copy shall bar that party, except upon grounds of plain error, from attacking on appeal the unobjected-to proposed factual findings and legal conclusions accepted by the district court, provided that the party has been served

15

with notice that such consequences will result from a failure to object.  Douglass v.

United Servs. Auto. Ass'n, 79 F.3d 1415, 1430 (5th Cir. 1996) (en banc) (citing 28

U.S.C. § 636(b)(1)).[23]

                    New Orleans, Louisiana, this _____19th_____ day of August, 2013.

                                    JOSEPH C. WILKINSON, JR.
                                UNITED STATES MAGISTRATE JUDGE

---

[23]Douglass referenced the previously applicable ten-day period for the filing of objections. Effective December 1, 2009, 28 U.S.C. § 636(b)(1) was amended to extend the period to fourteen days.